UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ANGELA BEEM,                                    )
                                                )    NO. CV-10-0037-JLQ
                   Plaintiff,                   )
                                                )    MEMORANDUM OPINION AND
                                                )    ORDER
                                                )
PROVIDENCE HEALTH & SERVICES,                   )
                                                )
                   Defendant.                   )
_____        )

BEFORE THE COURT are Plaintiff's Motion for Partial Summary Judgment (ECF No. 117) and Defendant's Motion for Summary Judgment (ECF No. 123). The Motions were heard on September 16, 2011. Plaintiff Angela Beem was represented by Chris Farias. Defendant Providence Health & Services d/b/a Providence Sacred Heart Medical Center was represented by Paula Lehmann (argued) and Kathryn Rosen. After oral argument the court received, and has considered, the supplemental briefs of the parties. (ECF No. 159 & 160).

**I. Introduction:**

Plaintiff Angela Beem ("Plaintiff" or "Beem") is a former employee of Defendant Providence Health and Services ("Defendant" or "Providence") who worked as a medical lab technician at Sacred Heart Hospital from 2000 to February, 2009. Plaintiff acknowledges that beginning in 2005 she had a problem with tardiness. (Am. Complt., ECF 46 ¶ 9). Plaintiff admits that she frequently exceeded the number of "tardies" allowed under Defendant's policy. (ECF 46 ¶ 11). Plaintiff alleges that her tardiness was the result of various medical conditions including fibromyalgia, osteoarthritis, thyroid irregularities, and her morbid obesity. (ECF 46 ¶¶ 7-9).

Plaintiff alleges that she requested accommodation under the Americans with

Disabilities Act ("ADA")  in the form of a flexible start time and her request was denied.
She further alleges she requested intermittent leave to cover her tardies under the Family
Medical Leave Act ("FMLA") which she claims was also denied.  Plaintiff began using a
wheelchair in 2008 and her problems with tardiness continued.  Plaintiff received a final
warning concerning her tardiness in October 2008, and was terminated in February 2009.
Plaintiff contends the Defendant failed to reasonably accommodate her alleged
disabilities.  Plaintiff's Amended Complaint contains three counts: 1) failure to
accommodate under the ADA; 2) violation of FMLA; and 3) wrongful discharge in
violation of public policy as expressed in the Washington Law Against Discrimination
("WLAD"), RCW § 49.60 et. seq.  Defendant denies the Plaintiff's claims.

## II. __Summary Judgment Standard of Review__

The purpose of summary judgment is to avoid unnecessary trials when there is no
dispute as to the material facts before the court and a party is entitled to judgment as a
matter of law. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468,
1471 (9th Cir. 1994).  The moving party is entitled to summary judgment when, viewing
the evidence and the inferences arising therefrom in the light most favorable to the
nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P.
56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  While the moving party
does not have to disprove matters on which the opponent will bear the burden of proof at
trial, the movant nonetheless bears the burden of producing evidence that negates an
essential element of the opposing party's claim and the ultimate burden of persuading the
court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz
Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the nonmoving party has the
burden of proof at trial, the moving party need only point out that there is an absence of
evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070,
1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than
simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec.*

ORDER - 2

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(citations and quotations omitted).

### III.  <u>Factual Background</u>

Beem was hired by Defendant in July 2000 to work as a medical laboratory technician ("MLT") on the graveyard shift.  Beem worked on the blood bench tracking and reading blood samples and setting up and preparing specimen samples.  In 2003, Beem moved to the day shift MLT position.  On the day shift, MLTs and medical techs (MTs) were designated to begin their work day at 6:30, 7:00, or 7:30 a.m.  Beem was the only lab employee allowed a later start time of 8:00 a.m.

Providence maintains that punctuality is an essential function of Beem's work as an MLT, and contends that lab specimens must be timely processed and the results reported to physicians.  When Beem was hired, she was given a copy of the Sacred Heart Medical Center personnel handbook.  It informed employees that excessive tardiness would result in progressive discipline and could result in discharge.  Excessive tardiness was defined as having more than 10 tardies in the most recent twelve months.  The collective bargaining agreement applicable to MLTs gave Defendant the "right to determine the starting time for each shift."  In 2005 the SHMC Attendance Policy informed employees that "regular attendance and punctuality are essential functions of any position at Sacred Heart Medical Center."

Beem's problems with tardiness began early in her employment.  Her Personnel Performance Evaluation from July 2002 reflects that she was tardy 10 times between July 2001 and July 2002. (ECF No. 127, Ex. C).  Her Performance Evaluation Summary from

July 2005 reflects that Beem had 14 tardies between July 2004 and July 2005. (ECF No. 127, Ex. C).  Her August 2006 Performance Evaluation states: "Angie still needs to address attendance issues.  She is on second written warning for tardies.  She currently has 13 blue cards[1] and 33 tardies." (ECF No. 127, Ex. C).  Ms. Beem began to show improvement.  The supervisor comments on her performance evaluation dated June 6, 2007 state: "Angie continues to show improvement with tardies and blue cards.  She currently has 22 tardies...".  By December 2007, she had reduced her number of tardies in the last 12 months to 9. (*Id*.).  However, by October 2008 the number of tardies had again increased to near 30 and her evaluation states: "Angie has difficulty getting to work on time.  We have discussed this issue on many occasions and the problem still exists." (*Id*.).  When Beem was terminated in February 2009, she had 39 tardies in the previous twelve months in clear violation of the 10 tardy policy.

Beem acknowledges that she was counseled about her excessive tardiness and received first and second written warnings prior to termination. (ECF No. 128-1, Beem Depo. at p. 116-117).  Beem was asked at deposition if it was accurate to say she was terminated for excessive tardiness, and she stated: "I was fired for the amount of tardies I had for a rolling year." (Beem Depo. p. 115).  Beem never filed a grievance related to the assessment of tardies, nor challenging the tardy policy. (Beem Depo. p. 124).  Beem was offered union representation prior to each investigatory meeting that preceded discipline and she declined. (*Id*.).

**IV.  Discussion**

**A.  Conflicts Between Plaintiff's Testimony and Declarations**

Before discussing the merits of Plaintiff's claims, it is necessary to address conflicts between Plaintiff's declarations, drafted for the purpose of summary judgment briefing, and her prior deposition testimony.

Beem's deposition was conducted over two days and resulted in a lengthy

---

[1]The record reflects that a "blue card" results when an employee clocks in at the wrong time clock or does not clock in.

transcript.  Despite having ample time in these depositions to tell her story, Beem filed

two different lengthy affidavits during the summary judgment briefing.  It is well

established that a party cannot defeat summary judgment by attempting to contradict

one's own prior testimony, or create an issue of fact between her testimony and

subsequent affidavit. <u>See</u> *EEOC v. Yellow Freight System*, 253 F.3d 943, 952 (7th Cir.

2001)("As a general rule, the law of this circuit does not permit a party to create an issue

of fact by submitting an affidavit whose conclusions contradict prior deposition or other

sworn testimony."); *Bryant v. American Airlines*, 75 Fed.Appx. 699 (10th Cir.

2003)(refusing to consider "certain allegations in the plaintiff's summary judgment

affidavit, to the extent that they contradicted her earlier deposition testimony"); *Burrell v.

Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir. 1999)("The district court held that

portions of Burrell's affidavit filed in opposition to summary judgment should be

disregarded, or at least discounted, because they directly contradicted her earlier

deposition testimony and thereby sought to create sham issues of fact.  We agree.").

Plaintiff's two declarations even sometimes contradict each other, despite both

being executed in a three week span during the summary judgment briefing. <u>See for

example</u> (ECF No. 138, ¶ 2 "In an earlier declaration, I said that this occurred in late

2002, but that is not correct.")  That correction does not concern a material fact.

However, there are more significant issues upon which Beem contradicts her own prior

testimony.

Beem testified at deposition that some of her tardies were attributable to not being

able to find a parking space, traffic, and road construction. (ECF No. 128-1, Beem Depo.

p. 247).  When asked if her tardies caused by things such as traffic and road construction

were less than ten, she said she didn't know: "I couldn't testify to that." (*Id*.).  Then in her

subsequent declaration of August 11, 2011, in response to Defendant's motion for

summary judgment, she states: "I am certain that tardies that were completely unrelated

to my disabilities were rare and well under the ten tardies allowed by SHMC each year."

(ECF No. 138, ¶ 38).

ORDER - 5

When asked at her deposition about whether she was offered a later start time of 8:30 a.m., as Defendant contends, Beem testified that she "didn't want to be different," "didn't want to stand out," "wanted to be there by 8:00 like everybody else," and "never considered a later start time than 8:00 a.m." (Beem Depo. p. 46 & 157). Defendant provided the testimony of Jerry Claridge and his e-mail, written in 2005, that at around that time (prior to December 2005) he had offered Beem a later start time. Beem did not deny this in her deposition testimony, rather she said that she did not want to consider starting later. Then in her subsequent declaration of July 18, 2011, Beem stated: "In litigation, I have learned that Jerry says he offered me a start time of 8:30. That is not true." (ECF No. 121, ¶ 8).

The December 16, 2005 e-mail of Jerry Claridge, Beem's supervisor, to three other Sacred Heart administrators states in relevant part: "Yes, I have offered her [Beem] to come in later, she could still get the work done if she came in at 08:30...a bit late for what she has to do, but I was willing to do that to accommodate her health issues. She said no, "I can come in earlier than 08:00 because I don't want to come in later, I am getting things under control." (ECF No. 85-1). This e-mail from Mr. Claridge, written nearly contemporaneously with the conversation it is referring to, and three years prior to Beem's termination, is consistent with Beem's deposition testimony. The court finds Beem's contradictory statement, made in her 2011 declaration submitted as part of the summary judgment briefing, does not create a genuine issue of material fact.

The court does not discount Beem's two declarations *in toto*, but does discount the statements contained therein that directly contradict her deposition testimony and the other evidence of record.

## B. ADA Claim

Plaintiff's First Amended Complaint alleges that she requested accommodation for her tardiness and that her request was denied. (ECF No. 46, ¶ 13). Plaintiff further alleges that Defendant did not engage in the interactive process to determine whether it could reasonably accommodate Plaintiff. (*Id.* at ¶ 23).

In order to prevail on a claim of unlawful discharge under the ADA, the plaintiff must establish that she is a qualified individual with a disability and that the employer terminated her because of the disability. *Humphrey v. Memorial Hospitals, Assoc.*, 239 F.3d 1128, 1133 (9th Cir. 2001)  A "qualified individual" is someone who with or without reasonable accommodation can perform the essential functions of the employment position. *Id.*  A "disability" is a "physical or mental impairment that substantially limits one or more of the major life activities." *Id.*

**(i) Punctuality As An Essential Function**

Defendant contends that arriving for work on time at the medical laboratory is an essential function of the position.  Defendant's employee handbook emphasizes the importance of reliable attendance and punctual arrival at work.  Defendant's hospital wide implementation of a "1-minute rule" emphasizes and reinforces that timely arrival at work is of critical importance.  Plaintiff agrees that certain laboratory tests are time sensitive. (Dec. of Beem, ECF No. 138 ¶ 3).  Plaintiff also agrees that timely reporting of lab results is critical. (*Id.* at ¶ 4, "I do not think that anyone would ever argue that it is not important to get lab results out in a prompt and efficient manner...").  Plaintiff further states, "Critical tests and results arise around the clock, at all times of the day, quite unpredictably." (*Id.* at ¶ 5).  If critical tests arise unpredictably as Plaintiff states, it is important that laboratory workers be at their assigned posts at the assigned time.

In determining whether a job duty is an essential function "consideration shall be given to the employer's judgment...and if an employer has prepared a written description...this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).  Various courts have considered whether punctuality is an essential function. See for example *Earl v. Mervyn's*, 207 F.3d 1361 (11th Cir. 2000) (concluding punctuality was an essential function of retail store area coordinator position); *Martinez v. Pacificorp*, 211 F.3d 1278 (10th Cir. 2000) (punctual arrival was essential function); *Ward v. Mass. Health Research Inst.*, 209 F.3d 29, 33 (1st Cir. 2000) ("we are inclined to presume that regular and reliable attendance is an essential function

of any job..."); *EEOC v. Convergys*, 491 F.3d 790, 796 (8th Cir. 2007) (punctuality is an essential job function but allowing 15-minute flex time was reasonable accommodation); *Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) ("regular attendance is an essential function of most jobs").  The Ninth Circuit has observed that, "excessive or unscheduled absences may prevent an employee from performing the essential functions of his job and thereby render him not otherwise qualified for purposes of the ADA." *Humphrey v. Memorial Hospitals, Assoc.*, 239 F.3d 1128, 1135 n.11 (9th Cir. 2001).  However, "regular and predictable attendance is not *per se* an essential function of all jobs." *Id.*

The Seventh Circuit, sitting en banc, reiterated that "in most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability." *EEOC v. Yellow Freight System*, 253 F.3d 943, 948 (7th Cir. 2001).  That is because, "attendance at the job site is a basic requirement of most jobs." *Id.*  As the court succinctly stated: "Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job." *Id.* at 949.  Although Beem was more commonly tardy, rather than absent for a whole work day, the same analysis applies--during the time she was late Beem was absent from the workplace and could not perform her job.

Despite Beem's admissions that some laboratory tests are time sensitive, she argues that in her opinion arriving on time is not an essential function.  Beem's opinion that it is not important to show up on time does not mean that it is not an essential function of her employment.  See *Martinez v. Pacificorp*, 211 F.3d 1278 (10th Cir. 2000)(unpublished).  Therein, the Tenth Circuit stated: "Ms. Martinez claims she met the second prong as, in her opinion, punctuality is not an essential function of her job.  She contends that being present at her job eight hours a day is essential, but the specific hours she should be present is not."  The Tenth Circuit rejected this argument: "Ms. Martinez' personal opinion cannot override her employer's stated requirements and the language contained in her collective bargaining agreement." *Id.* at *2.  Similarly here, the collective bargaining

agreement provided that the employer had the "right to determine the starting time for each shift."  The Sacred Heart handbook stated "regular attendance and punctuality are essential functions of any position at Sacred Heart Medical Center," and Sacred Heart implemented a 1-minute rule - - even 1 minute late was a tardy, thus demonstrating the essential importance of punctuality.  Beem seems to take issue with the 1-minute rule, contending that she was usually only a few minutes late and could still complete her assigned tasks.  However, it is not this court's role to instruct Sacred Heart Hospital as to the wisdom of its attendance and tardy policies. See *Yellow Freight*, 253 F.3d at 950 ("our role is not to second guess the business decisions of a company and to inquire as to whether the goals set by management demand 'too much' from its employees, nor to make things less difficult for those who come before us.").

However, there is additional evidence of record, more than just Beem's opinion, that supports her contention that strict punctuality is not an essential function of her employment.  Ms. Jennifer Sweet was deposed.  She was a co-worker of Ms. Beem's in the laboratory, and has worked in the lab for 35 years.  She testified that, "arrival times are flexible to some degree.  I most frequently go in at 7:30.  On a rare occasion, I will go at 6:30.  And semi-frequently, I go at seven." (ECF 128-1, Depo. of J. Sweet p. 9-10). Ms. Beem's declaration supports that the arrival times were flexible.  She stated that the start times varied between 6:30 and 7:30 am (and in her case, 8:00 am) but that "no one on dayshift was scheduled for any particular time.  So for any particular assigned station, start time would vary on any given day." (ECF No. 138, ¶ 22).

Additionally, Ms. Lourie Morse from Sacred Heart's Human Resources Department, while testifying that punctuality was an essential function of all jobs at Sacred Heart (Morse Depo. p. 63), when asked specifically if punctuality was an essential function of Ms. Beem's job testified, "I don't know." (*Id.* at 67). Both Ms. Morse and Jerry Claridge, Beem's supervisor, testified that they were not aware of any problems that had occurred in the lab as a result of Ms. Beem arriving late. (Morse Depo. p. 68; Claridge Depo. p. 128).  However, Mr. Claridge did testify that there was a potential for adverse patient

outcomes if lab reports were not timely reported. (Claridge Depo. p. 129).  There is also the fact that Ms. Beem had problems with tardiness during nearly the entire course of her over eight years of employment with Defendant, yet despite her problems with tardiness earned satisfactory scores in the other categories of her performance evaluation.

The court must conclude that a question of fact exists regarding whether strict punctuality was an essential function of Ms. Beem's position.  A jury could conclude from the facts of record that strict punctuality was not an essential function, particularly given that lab employees were allowed to arrive between 6:30 a.m. and 7:30 a.m. on a variable basis.  Further, the fact that Ms. Beem was seemingly able to satisfactorily complete her job responsibilities, despite failing in this allegedly essential function, calls into question whether strict punctuality was "essential."

**(ii) Reasonable Accommodation**

If punctuality is an essential function of Beem's job, she must demonstrate that she could perform that function with a reasonable accommodation: "The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable." *Earl v. Mervyn's*, 207 F.3d 1361, 1367 (11th Cir. 2000); *Dark v. Curry County*, 451 F.3d 1078, 1087 (9th Cir. 2006).   Beem did not request a reasonable accommodation that would allow her to perform the function of punctuality, rather she requested an exemption from that function.  Beem wanted to be able to call in on the mornings she would be late, and not have it count as a tardy.  This is strikingly similar to *Earl* where the Eleventh Circuit stated: "The only 'accommodation' [Earl] identified was to allow her to clock in at whatever time she arrived, without reprimand, and to permit her to make up the missed time at the end of her shift." 207 F.3d at 1367.  The Eleventh Circuit found that such request is not a "reasonable accommodation."  The *Earl* court stated: "A request to arrive at work at any time, without reprimand, would in essence require Appellee to change the essential functions of Appellant's job, and thus is not a request for a reasonable

ORDER - 10

accommodation." *Id.* at 1367.  Similarly, a request for unlimited sick days, as needed, without being penalized is not reasonable as a matter of law. *EEOC v. Yellow Freight System*, 253 F.3d 943, 948 (7th Cir. 2001).  An employer is "not obligated to tolerate erratic, unreliable attendance or to provide an accommodation which would impose an undue hardship on the business." *Id.* at 950.

As the plaintiff, Beem "has the burden of showing the existence of a reasonable accommodation that would have enabled [her] to perform the essential functions of an available job." *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006).  Other Circuits have found that where the plaintiff does not suggest a reasonable accommodation, the defendant has no duty to engage in an 'interactive process' or to show undue hardship.  *Earl,* 207 F.3d at 1367; see also *Fisher v. Vizioncore, Inc.*, 2011 WL 2883292 (7th Cir. 2011)(rejecting plaintiff's claim of failure to engage in interactive process because plaintiff "did not meet her burden to show a reasonable accommodation that, had there been an interactive process, she might have obtained.").  Beem wanted to be able to call in when she would be late, and not have that period of absence counted as a tardy.  Beem was not requesting an accommodation to meet an allegedly essential function, but rather an exemption from that function.  However, sometimes an accommodation is an exemption, or seemingly different treatment. "Unlike other types of discrimination where identical treatment is the gold standard, identical treatment is often not equal treatment with respect to disability discrimination." *Gambini v. Total Renal Care*, 486 F.3d 1087, 1095 (9th Cir. 2007).  However, the "ADA does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees." *Dark*, 451 F.3d at 1089.  Therefore if punctuality is an essential function, Beem's requested exemption from the tardy policy would not be reasonable.

Allowing a flexible start time or modified schedule can, in certain circumstances, be a reasonable accommodation. *Livingston v. Fred Meyer Stores, Inc.*, 2010 WL 2853172 (9th Cir. 2010). In *Livingston*, allowing the plaintiff a modified schedule of

leaving earlier during the winter months was found to be reasonable because defendant had allowed her that modified schedule the year before without undue hardship.  Plaintiff, Livingston, was a wine salesperson at Defendant Fred Meyer, and wine sales had increased while she was on the modified schedule.  This case is factually distinct, and Providence was already allowing Beem a modified schedule.  Beem was allowed a later start time than the other employees in the lab who held similar positions, but continued to arrive late.  Plaintiff was allowed to start at 8:00 a.m., even though the other employees began their shifts between 6:30 and 7:30 a.m.  Mr. Claridge, Beem's supervisor, testified that he offered in 2005 to move Beem's start time to 8:30 a.m., but Beem declined.  He also testified that allowing Beem to have the later start time would require him to have someone else cover her area until she arrived. (ECF No. 128-1, Claridge Depo. p. 121, 124-26, 130).  Beem rejected this offer because she wanted to be there by 8:00 a.m. because she "didn't want to stand out" so she "never considered a later start time than 8:00." (ECF No. 128-1, Beem Depo.  p. 46-47, 157).

Beem repeatedly stated at her deposition that the accommodation she sought was to "not be disciplined for tardies" (Beem Depo. p. 157), for Providence "to not count my tardies as a disciplinary thing, within reason," (*Id.* p. 159) and for Providence "to be lenient on the tardies." (*Id.* at p. 203).  If punctuality is an essential function, then this is not a reasonable accommodation.  The plaintiff "has the burden of showing the existence of a reasonable accommodation that would have enabled him to perform the essential functions of an available job." *Dark*, 451 F.3d at 1088.  Thus, Beem must suggest an accommodation that would allow her to arrive at work on time, not an exemption from the tardy policy.  To avoid summary judgment Beem "need only show that an accommodation seems reasonable on its face, ie. ordinarily or in the run of cases." *Id.* Perhaps in most cases, Beem's requested accommodation would not be reasonable.  However, this determination rests on whether strict punctuality was an essential function and a question of fact remains as to that determination.

**(iii)  Interactive Process**

ORDER - 12

Under Ninth Circuit case law, an employer has an "affirmative duty" to engage in the interactive process with an employee, if that employee is a qualified individual with a disability, to explore methods of reasonable accommodation. *Humphrey v. Memorial Hospitals*, 239 F.3d 1128, 1137 (9th Cir. 2001). The duty to accommodate is a "continuing duty that is not exhausted by one effort." *Id.* at 1138. The employer's obligation to engage in the interactive process "extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing." *Id.*

The record evidences that Providence did make accommodations for Beem and did to some extent engage in the interactive process. Beem was provided a closer parking space than other lab employees. Beem was provided a start time of 8:00 a.m., later than any of her co-workers who reported to work between 6:30 a.m. and 7:30 a.m. There is evidence that at some point in late-2005 Beem was offered but did not wish to consider a still later time of 8:30 a.m. However, during 2006, Beem sometimes clocked-in at 8:15 a.m. and was told that was not an acceptable start time. Providence also made accommodations for Beem not related to her tardiness, but related to her functioning in the workplace. Providence engaged an ergonomic consultant who made recommendations, several of which were implemented, including a new chair for Beem, a face shield for Beem, a higher gooseneck faucet, and new air gun hose.

However, despite making some accommodations, Beem was terminated for being on most occasions less than five minutes late. Dana Duzan, the Laboratory Manager, testified that the average length of Beem's tardiness was 1 to 6 minutes. (ECF 128-2, p. 26). Thus, the once offered accommodation of a start time of 8:30 a.m. may have been sufficient to allow Beem to avoid termination.

Thus questions remain concerning the interactive process which preclude summary judgment. Failure to engage in the interactive process is not an independent cause of action. *Kramer v. Tosco Corp.*, 233 Fed.Appx. 593 (9th Cir. 2007). Rather the inquiry is relevant to whether a reasonable accommodation existed which the employer failed to

provide.  It may be that a jury could determine that Beem was responsible for the breakdown in the interactive process when she declined the 8:30 a.m. start time.  See *Puletasi v. Wills*, 290 Fed.Appx. 14 (9th Cir. 2008)("An employer is liable for failing to provide reasonable accommodation only if it is responsible for the breakdown in the interactive process.");  *Reza v. International Game Technology*, 351 Fed.Appx. 188 (9th Cir. 2009) ("After [Plaintiff] rejected that reasonable accommodation, she was no longer a qualified individual under the ADA.").  However, this offer of 8:30 a.m. occurred in 2005, and Beem continued to raise the issue of her disability thereafter.  Beem also argues that she suggested other accommodations - - to switch to a graveyard shift. (ECF No. 138 ¶ 43).  These requests were made in "early 2009" just prior to her termination in February 2009, and after her second written warning concerning tardiness in October 2008.  Although Beem's request to work graveyard could be viewed by the jury as a 'last ditch' effort to save her job, when termination was already justified under the tardy policy, the jury could also view the shift change as a reasonable accommodation.  The court in *Humphrey* said the duty to engage in the interactive process was "continuing" and indicated it extended up to the point of termination.

Beem claims there were two open MT positions on graveyard. (ECF No. 138, ¶ 44).  The record establishes that Beem was not qualified for the MT positions, as they required a four-year college degree.  Beem admits as much, asserting that she "could soon be qualified" as she was allegedly working towards her degree.  Beem also asserts there was an open MLT position.(ECF No. 138, ¶ 45).  Defendant's argument is that union and seniority rules prevented them from merely transferring Beem to the graveyard MLT position and rather the position would need to be posted.  An e-mail exchange between Sacred Heart administrators on February 1, 2009 (just 8 days before Beem's termination) shows that Beem's proposal received some consideration.  Jerry Claridge, Beem's immediate supervisor, e-mailed Dana Duzan, the Laboratory Director, and Lourie Morse, in Human Resources, stating in part: "Angie has expressed an interest in working night shift because she feels this will allow her the ability to get to work on time.  Loraine

(night shift MLT) has expressed an interest in working day or evening shift." (ECF No. 137-7).  Mr. Claridge viewed the proposal as one they "should at least consider."  Ms. Morse from HR responded: "Unfortunately the contract does not allow us to let staff members trade.  The positions would have to be posted, which could result in one of them not getting the shift they desire." (*Id.*).  When an employer has a well-established and consistently applied seniority system, the employer is generally not required to deviate from that system and assign a disabled employee to a particular position.  The Supreme Court has stated that such a request is not "ordinarily" a reasonable accommodation and the ADA does not require the disabled employee be reassigned if such reassignment violates the seniority system.  See U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 406 (2002).  However, the Court also stated that under special circumstances such accommodation could be reasonable, and further stated:

> The simple fact that an accommodation would provide a 'preference'--in the sense that it would permit the worker with a disability to violate a rule that others must obey--cannot, *in and of itself*, automatically show that the accommodation is not reasonable.

*Id.* at 398 (emphasis in original).  On the state of the current record, it is unclear to what extent Defendant considered and explored the potential for reassignment, and in what manner its decision was communicated to Beem.  The Ninth Circuit in *Humphrey* stated that rejection of the employee's work-at-home request "and its failure to explore with Humphrey the possibility of other accommodations" was a violation of its duty to engage in the interactive process. *Id.* at 1139.  Whether Defendant engaged in good faith in the interactive process, and whether there existed a reasonable accommodation that would have allowed Beem to alleviate her problems with tardiness, are questions for the jury.

### C.  FMLA Claim

Plaintiff claims that after her request for accommodation under the ADA was denied, she "later requested intermittent FMLA leave to deal with her tardiness." (ECF No. 46, First Amend. Complt. ¶ 14).  By "later," Plaintiff presumably means after 2005, as that is when she alleges her request for ADA accommodation was denied. (ECF No.

46, ¶ 13).  This vagueness as to the timing of Beem's FMLA request is telling, because Beem never actually submitted Defendant's required paperwork to seek FMLA leave regarding her tardiness, and the medical documentation she did submit was submitted in December 2005, which as discussed *infra*, raises statute of limitations concerns.  Plaintiff alleges this request was denied. (ECF No. 46, ¶ 14).  At oral argument Plaintiff contended that she first made a request via e-mail in August 2005, and then did rely on the letter and certification of Nurse Practitioner Koep submitted in 2005, as her written application. Counsel admitted that the only medical documentation she submitted regarding her FMLA request to cover tardies were these 2005 documents from Koep.  Counsel also admitted that Beem did not complete a FMLA Leave Request Form pertaining to her tardies. (ECF No. 158, p. 15-16).

**(i)  Plaintiff's FMLA Leave Requests**

Plaintiff previously made written requests for FMLA leave (not related to her tardiness), pursuant to Providence's policies on several occasions throughout her employment,  and such requests were approved.  Plaintiff submitted a FMLA request in 2002 related to back problems, and that request for leave was approved by Defendant. (ECF 128-1; Depo. of A. Beem p. 149-150).  In 2003, Plaintiff requested a FMLA leave of absence for ankle surgery, and the request was approved. (*Id*. at p. 151).  In September 2004, Plaintiff requested FMLA leave for another surgery, and the request was approved. (*Id*.).  In the year 2006, Plaintiff requested FMLA leave for a back/rib injury, and such request was approved. (*Id*.).  In 2007, Plaintiff requested FMLA leave to care for her mother.  That request was approved. (*Id*. at p. 152).  In January 2008, Plaintiff requested FMLA leave for an injury to her left knee and right arm that occurred when she fell on ice on December 29, 2007.  That request was also approved. (*Id*. at p. 153).  Thus on at least six occasions, spanning from 2002 to 2008, Plaintiff had submitted FMLA leave requests, and Defendant had approved such requests.  Providence never rejected a written FMLA application submitted by Beem.

Plaintiff never submitted a written FMLA leave request related to excusing her

tardiness from work.  Plaintiff's counsel at oral argument admitted that there was no evidence in the record that Plaintiff provided notice on the days she was tardy, ie. she did not call and say she would be arriving late due to her health condition. (ECF No. 158, p. 7).  Plaintiff contends that the 2005 certification from Nurse Practitioner Koep was her written application for leave pertaining to tardiness.  In January 2009, shortly before her February 2009 termination and after receiving her second written warning for tardiness, Plaintiff met with Defendant's FMLA Coordinator, Melinda Dakan, to discuss her continued tardiness.  It is undisputed that Ms. Dakan e-mailed Plaintiff a FMLA application packet on January 7, 2009. (ECF No. 143, Plaintiff's Resp. to St. of Facts # 73).  Plaintiff admits that she did not follow up with her health care provider to complete the FMLA application, nor did Plaintiff complete and return to Defendant the FMLA application she received on January 7, 2009. (ECF No. 143, Plaintiff's Resp. to St. of Facts #74-75).  On February 9, 2009, Plaintiff was terminated because of her continued tardiness.

**(ii)  Serious Health Condition**

"The FMLA provides job security to employees who must be absent from work because of their own illnesses, to care for family members who are ill, or to care for new babies." *Bailey v. Southwest Gas Co.*, 275 F.3d 1181, 1185 (9th Cir. 2002).  It is unlawful for an employer to interfere with, restrain, or deny an employee's exercise of FMLA rights. *Id.*  FMLA protection extends only to "serious health conditions," defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility, or (B) continuing treatment by a health care provider." *Lackey v. Jackson County*, 104 Fed.Appx. 483 (6th Cir. 2004) citing 29 U.S.C. § 2611(11).  Beem does not contend that she was tardy because she was receiving inpatient care.  Therefore she must show that her illness, injury, impairment, or condition required continuing medical treatment.

In addition to her own assessment of her health, the only evidence Beem provided from a health care provider is the quite dated evaluation of Julia Koep, ARNP.  Ms. Koep

wrote a letter dated December 13, 2005, which stated in part that Beem "has both endocrine and auto-immune disorders with which she struggles successfully and persistently." (ECF No. 120-9).  It stated Beem's "medical issues are real" and that she has pain in the mornings.  It concluded: "Is it possible to be flexible as to her arrival time on mornings her pain is in flare so that lateness is not an issue?"  Plaintiff also submitted what she claims is a FMLA certification form she provided to Defendant in December 2005. (ECF No. 120-13).  Notably, neither the employee or patient name portion of the form is completed.  The form is signed by Nurse Practitioner Koep and dated December 21, 2005.  The condition is described as "morbid obesity results from glandular disorder & contributes to joint pain that is chronic & intermittently exacerbates." (ECF 120-13).  As to whether it would "be necessary for the employee to take work only intermittently or to work on less than a full schedule as a result of the condition", Koep stated "no."  As to whether additional treatments are necessary, Koep's response is "NA," and as to whether the condition required absence from work Koep stated, "needn't be absent from work just needs some flexibility."

Koep's 2005 statement that it was not necessary for Beem to take work only intermittently or to work less than a full schedule amounts to a "negative certification." See *Nawrocki v. United Methodist Retirement*, 174 Fed.Appx. 334 (6th Cir. 2006); *Stoops v. One Call Communications*, 141 F.3d 309 (7th Cir. 1998).  When an employee submits a medical certification stating that leave is **not** required, an employer is not required to seek a second opinion. Stated otherwise, "an employer is entitled to rely on a negative certification in denying FMLA leave." *Nawrocki*, 174 Fed.Appx. at 338 citing *Stoops*.  In *Nawrocki*, the court found the medical certification to be inconsistent in that it stated plaintiff had a serious health condition, but also that absence from work was not required.  The Sixth Circuit found the "contradictory medical certification relegated it to a negative certification." *Id.* at 338.

Beem was not receiving inpatient care.  Her Nurse Practitioner indicated in 2005 that her condition did not require ("NA", not applicable) additional treatment, and that it

was not necessary for Beem to be absent from work or work intermittently.  From Koep's evaluation, it does not appear that Plaintiff's condition would qualify as a "serious health condition."  The other problem that Plaintiff faces in basing her FMLA entitlement claim on documents allegedly submitted in 2005, is that such claim is time-barred.  If Plaintiff is arguing that Defendant should have awarded her FMLA leave for her tardies based on the December 2005 submission, that claim is barred by the two or three year statute of limitations.  Violations of FMLA are generally governed by two-year period of limitations, but claims for a "willful" violation of FMLA are subject to a three-year period. *Bass v. Potter*, 522 F.3d 1098,1102-1103 (10th Cir. 2008); 29 U.S.C. § 2617(c).  This action was filed on February 10, 2010, over four years after the December 2005 medical certification was submitted.

Defendant's Motion for Summary Judgment does not focus on the statute of limitations issue or whether Beem had a "serious health condition", but Defendant does raise the "serious health condition" issue in its Memo in Opposition to Plaintiff's Motion for Partial Summary Judgment. (ECF No. 132).  Plaintiff seems to suggest in her Reply brief (ECF No. 147 p. 12) that all that is required to establish her "serious health condition" is her own assessment and declaration.  This would render the discussion of medical certification from a health care provider in the FMLA Regulations superfluous. See for example 29 CFR 825.100(d)("In addition, the employer may require an employee to submit certification from a health care provider to substantiate that the leave is due to the serious health condition...").  Additionally, under FMLA "serious health condition" is defined by reference to the need for inpatient care or continuing treatment. 29 CFR 825.114.  Thus it would be bizarre indeed if an employee's mere declaration of "I have a serious health condition" was dispositive. See also *Lackey v. Jackson County*, 104 Fed.Appx.483, 489 (6th Cir. 2004)("The district court concluded that aside from Plaintiff's own allegations and, at best, ambiguous doctor notes, no evidence was presented to establish that Plaintiff has a serious health condition. We agree.").

Interestingly, Plaintiff states that she produced 1182 pages of medical records to

Defendant during discovery, yet in support of her Motion for Partial Summary Judgment on the FMLA claim, all she offered was her own opinion as to her health, a 1-page letter from her Nurse Practitioner, Ms. Koep, dated December 13, 2005, and a medical certification form completed by Ms. Koep that does not even bear Beem's name, but which Beem claims was submitted to Defendant in 2005.  Plaintiff suggests that it was Defendant's burden to put the medical records in the summary judgment record (Reply Br. ECF No. 147 p. 14: "Defendant failed to point to a single page of those records..."), however, it is Plaintiff's initial burden to demonstrate that she had a serious health condition. *Lackey v. Jackson County*, 104 Fed.Appx.483, 489 (6th Cir. 2004) ("Not all medical problems are subject to FMLA.  It is Plaintiff's burden to establish that his medical problems are severe enough to warrant the FMLA protection.")

### (iii)  Beem Failed to Complete an Application for FMLA Leave

Defendant argues that assuming that Beem did suffer from a serious health condition, Beem never made a request for FMLA leave related to her tardies.  Beem did not comply with Defendant's procedure for obtaining FMLA leave.  Beem was well aware of the required procedure, as she had successfully employed it at least six times during her employment with Defendant. "To gain FMLA protection, [plaintiff] would have had to file proper documentation and comply with employer notification requirements." *Peterson v. City of Houston*, 273 F.3d 1099 (5th Cir. 2001).  FMLA requires that an employee give 30 days notice before leave is set to begin, or if leave is required to begin in less than 30 days, such notice as is practicable. 29 U.S.C. § 2612(e).  An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. 29 CFR § 825.302(d); see also *Buckman v. MCI World Com*, 374 Fed.Appx. 719 (9th Cir. 2010)("FMLA allows an employer to require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances.").  The FMLA Regulations provide that 15 days is a presumptively reasonable amount of time to complete a medical certification. 29 C.F.R. §

825.311.  Beem did not complete Providence's written FMLA application or complete a medical certification after receiving the FMLA application packet in January 2009. Plaintiff was terminated in February 2009, over 30 days after receiving the FMLA Application packet.  The termination was based on her record of tardies accumulated over the prior 12 months.

The necessary elements of a FMLA interference claim are: 1) an entitlement to FMLA leave; 2) an adverse action by plaintiff's employer, which interfered with plaintiff's right to take FMLA leave; and 3) a showing that the employer's adverse action was related to the exercise, or attempt to exercise, FMLA rights. *Bass v. Potter*, 522 F.3d 1098 (10th Cir. 2008).  As stated *supra*, it is questionable whether Koep's 2005 medical certification and letter provided a sufficient record to Beem's employer to establish she had a "serious health condition," and it is undisputed that Beem did not complete and submit the leave form in January 2009 to request FMLA leave for her tardies.  Even assuming that Plaintiff meets the first element, and she does meet the second element of adverse action (termination), Plaintiff must still show that the adverse action was related to her attempt to take FMLA leave.

**(iv) Request For FMLA Leave Does Not Stay Disciplinary Proceedings**

Plaintiff had an ongoing history of tardiness spanning several years, was repeatedly counseled, received written warnings, and was subject to discipline for continually having 10 or more tardies in a 12-month period under Defendant's policy.  At the time of her termination, Beem had 39 tardies in the most recent 12 months.  Plaintiff had received a second written warning in October 2008, prior to her conversation with Melinda Dakan in January 2009 concerning possibly seeking FMLA leave for her tardiness problem.

"An employee who requests or is on FMLA leave has no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request or leave than he or she did before submitting the request." *Bryant v. American Airlines*, 75 Fed.Appx. 699 (10th Cir. 2003) <u>citing</u> *McBride v. Citgo Petroleum Corp.*, 281 F.3d 1099, 1107 (10th Cir. 2002).  "The FMLA does not require an employer to

allow an employee to stay in a position that the employee cannot perform." *Hatchett v. Philander Smith College*, 251 F.3d 670, 677 (8th Cir. 2001). A plaintiff requesting FMLA leave in the midst of disciplinary proceedings related to tardiness or absences does not prevent otherwise valid termination. In *Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir. 2000), plaintiff was on probation for on-going problems with punctuality when she made a FMLA request and was terminated. The Eleventh Circuit affirmed the district court's grant of summary judgment to the employer stating, "the record demonstrates Appellant was fired, pursuant to the specific terms of Appellee's detailed policy, for repeated and numerous punctuality infractions." *Id.* at 1368. Similarly here, the record reflects that Beem had on-going problems with punctuality for several years. At several points in her employment she had in excess of 10 tardies and was subject to discipline. As counsel conceded at argument, "there's nothing in the record to suggest" that Beem provided notice on the days she was going to be late by calling in advance and stating that she would be tardy due to her medical condition. (ECF No. 158, p. 7). At the time of her termination, she had 39 tardies in the most recent twelve months. Inquiring about FMLA leave a month before her termination, and after accumulating these tardies, does not prevent Providence from terminating her for having previously failed to adhere to its policies.

### (v) Does FMLA Leave Cover Unplanned, Sporadic, Tardiness?

Plaintiff's briefing does not discuss any cases in which an individual has used FMLA leave in the manner which she suggests - - taking leave in short, usually 15 minute or less, increments, and with little notice (perhaps a phone call an hour before scheduled start time) to cover workplace tardiness. Plaintiff claims she should be able to use intermittent FMLA leave in this manner. The Regulations provide that, "[e]mployees needing intermittent FMLA leave or leave on a reduced leave schedule must attempt to schedule their leave so as not to disrupt the employer's operations." 29 CFR § 825.117. Plaintiff points to language in the Regulations that, "There is no limit on the size of an increment of leave when an employee takes intermittent leave...". 29 CFR § 825.203.

That section further provides, "For example, an employee might take two hours off for a medical appointment...". *Id.*  Clearly an employee may schedule a medical treatment appointment for a serious health condition, however, Plaintiff sought to use the FMLA to excuse unscheduled, unplanned tardiness. "Courts have been reluctant to read the FMLA as allowing unscheduled and unpredictable, but cumulatively substantial, absences, when the Americans with Disabilities Act protects only persons who over the long run are capable of working full time." *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1007 (7th Cir. 2001).

In *Mauder v. Metropolitan Transit Authority*, 446 F.3d 574 (5th Cir. 2006), Plaintiff sought to use intermittent FMLA leave to take short breaks throughout the day to use the restroom because he suffered from temporary uncontrollable bowel movements. The court stated: "We are unable to locate a case where 'temporary' FMLA leave was awarded in such a context-where the leave given does not constitute time away from a place of work, but merely periodic time away from a desk throughout the day." *Id.* at 580. Although the relief sought by Beem was not identical to that in *Mauder*, she similarly sought to use FMLA leave to cover brief (typically 15 minutes or less), unpredictable, and unscheduled time away from work not related to obtaining medical treatment.

The most analogous FMLA case dealing with tardies this court has found is *Brown v. Eastern Maine Med. Center*, 514 F.Supp.2d 104 (D. Maine 2007), where the court framed the question as:

> When an employee is chronically late for work (usually by only a few minutes) and her employer fires her as a result, does the federal Family and Medical Leave Act protect these late arrivals as 'intermittent leave' if a doctor concludes later that a medical condition was responsible for the chronic tardiness?

The district court answered "no," and the reasoning therein is persuasive.  Brown was a nurse technician and was scheduled to begin work at 6:00 a.m..  Aside from tardiness and absenteeism, she was capable of doing her job--as apparently was Beem.  Brown was "persistently" late, usually "by only a few minutes," as was Beem.  Brown suffered from fatigue and depression of unknown origin--perhaps lupus, fibromyalgia, chronic fatigue--

but she did not have a definitive diagnosis.  Brown had informed her employer that her tardiness was due to her health, and that she was scheduling additional appointments to hopefully obtain a definitive diagnosis.  Brown's employer did not advise her of intermittent FMLA leave and terminated her.  After termination, Brown obtained a diagnosis of a connective tissue disorder and her physician said it was impossible for Brown to arrive at work on time.

The *Brown* court began its analysis by recognizing the FMLA does allow intermittent leave, and although this is more commonly for medical treatment or recovery, it can, under the Regulations, also be for periods of incapacity not involving medical treatment.  The Regulations give as examples "onset of an asthma attack" or for a pregnant employee, "severe morning sickness." 29 CFR § 825.114(e).  However, Brown was not incapacitated and could perform the functions of employment "she simply could not get to work on time." *Id.* at 110.  The court said that allowing FMLA intermittent leave "for the brief duration of the lateness, distorts the English language and trivializes the purpose of the Act." *Id.*  The court observed that Brown was not suffering in the morning from some sort of intermittent attack, such as morning sickness or an asthma attack, that would resolve or for which she was seeking immediate treatment, but rather was seeking "immunity for perennial lateness of a few minutes, caused by a medical condition that made her resist not getting out of bed to go to work.  Lateness is not leave." *Id.* at 111.

As discussed *supra*, by continually being tardy Plaintiff failed to meet a function of her job--punctual arrival (whether essential or not, remains in dispute).  Generally, an individual takes FMLA leave when they are unable to meet job requirements, or for medical treatment, with the idea that when they return they will be able to meet the essential functions.  "[T]he FMLA does not mandate that employers reinstate employees who are unable to perform the essential functions of their positions." *Battle v. United Parcel Service*, 438 F.3d 856, 864 (8th Cir. 2006).  Allowing Beem to use FMLA leave in the manner she suggests, would allow her to continue working for Providence, while

ORDER - 24

failing to meet the functions of the position.

       While the court is sympathetic to those who endeavor to work despite disability or health conditions, the protection of the law is not boundless.  As stated by the Seventh Circuit:

> [Plaintiff] seems to want to turn the ADA on its head.  It is as if he thinks that rather than ensuring that he be allowed to work, the ADA requires [his employer] to provide him with a job but not require that he regularly perform it.  Rather [his employer] must hire another employee to do the job for him while he remains a full time employee.  The Act does not go so far.  The ADA protects an important, but finite, universe of people.

*EEOC v.Yellow Freight*, 253 F.3d 943, 952 (7th Cir. 2001).  The same is true of the FMLA, it protects an important, but not boundless, universe of people.

       The evidence Plaintiff alleges she provided to Providence concerning her health condition was provided in December 2005.  Nurse Practicioner Koep completed a medical certification form which stated the following: it was not necessary for Beem to work only intermittently or to work on less than a full schedule; additional treatment for Beem's condition was "not applicable"; and that Beem, "needn't be absent from work just needs some flexibility."  This does not appear to establish that Plaintiff had a "serious health condition," and on its face states that Beem did not need intermittent leave.  Assuming *arguendo* that it was a valid request for leave, Plaintiff did not timely pursue a FMLA entitlement claim based on the December 2005 submission.  Plaintiff inquired again in January 2009, about using FMLA leave for her tardies, but failed to comply with Providence's procedure to submit a leave request and did not submit a medical certification. 29 CFR § 825.311(b)("If the employee never produces the certification, the leave is not FMLA leave.").  Even if she had submitted the paperwork, under the case law discussed *supra*, Plaintiff's contention that intermittent FMLA leave would cover her unscheduled, unpredictable tardiness is not legally supported.  Providence is entitled to summary judgment on Plaintiff's FMLA claim.

      **D.  State Law Wrongful Termination Claim**

ORDER - 25

Plaintiff alleges in Count III of her First Amended Complaint (ECF No. 46) that Defendant "failed to accommodate and terminated Plaintiff in violation of the clear mandate of public policy expressed in the Washington Law Against Discrimination, RCW 49.60 et seq." (ECF 46, ¶¶ 30-32).  The WLAD protects, in part, the right of individuals to obtain and hold employment free from discrimination based on "race, creed, color, national origin, sex, honorably discharged veteran or military status, sexual orientation, or the presence of any sensory, mental, or physical disability." RCW 49.60.030.  Plaintiff's Count III contains no new substantive allegations, but rather incorporates Paragraphs 1-29 of her First Amended Complaint.  Plaintiff's Count III alleges failure to accommodate, and is therefore most analogous to her ADA claim.  Just as in *Kees v. Wallenstein*, 161 F.3d 1196 (9th Cir. 1998), the disposition of the ADA claim controls the disposition of the WLAD claim based on alleged disability discrimination. *Id*. at 1199 ("The court decides plaintiff's state anti-discrimination claims using the same analysis it uses to interpret federal anti-discrimination law.").  Therefore, Providence's request for summary judgment in its favor on Count III of the First Amended Complaint is denied for the reasons stated *supra* in discussing the ADA claim.

### V.  Conclusion

Defendant is entitled to summary judgment on Plaintiff's FMLA claim, but the other claims present issues for the jury.  On Count I, the ADA claim, the evidence of record presents a question of fact as to whether timely arrival at work on a dependable basis was an essential function of Plaintiff's position. Questions of fact also remain as to the conduct of interactive process, who was responsible for its breakdown, and whether there existed a reasonable accommodation.

On Count II, the FMLA claim, Defendant is entitled to judgment.  While serious questions exist as to whether the evidence submitted establishes that Beem had a "serious health condition," the court has assumed for the purposes of these Motions that she did have a "serious health condition."  Beem submitted a medical certification which she contended was the basis for her intermittent leave request, in December 2005, in which

her Nurse Practitioner indicated she did **not** need intermittent leave.  To the extent Plaintiff's claim is based on denial of entitlement to FMLA leave or interference with FMLA leave based on Defendant's actions in December 2005, Plaintiff did not timely pursue that claim.  When Beem inquired about leave related to her tardies again in January 2009, when she had already accumulated over 30 tardies and received a second written warning, she failed to complete the FMLA application and did not submit a medical certification.

Plaintiff's state law discrimination claim in Count III survives the defense motion for summary judgment for the reasons stated *supra*.  Accordingly,

**IT IS HEREBY ORDERED**:

1.  Defendant's Motion for Summary Judgment (ECF No. 123) is **GRANTED IN PART AND DENIED IN PART**.  Defendant is entitled to summary judgment on Count II of Plaintiff's First Amended Complaint (ECF No. 46) which alleges violation of the FMLA.  Defendant's Motion is denied as to Count I (ADA) and Count III (state law).

2.  Plaintiff's Motion for Partial Summary Judgment (ECF No. 117) is **DENIED**.

3.  The parties shall meet and confer and thereafter file a joint status report suggesting dates for pretrial filing deadlines, pretrial conference, and trial.  If the parties are unable to agree on any matter, the report may state the position of each party.  This report shall be filed no later than **November 4, 2011**.  The report shall also state whether the parties request additional time for mediation.  Counsel are advised that in suggesting dates, this court will not be available to conduct a pretrial conference until May 2012, or conduct a jury trial until June 2012.  If the parties request  earlier dates, the matter may be assigned to another judge for trial, if another judge is available.

**IT IS SO ORDERED:**

The Clerk is hereby directed to file this Order and furnish copies to counsel.

**DATED** this 13th  day of October, 2011.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER - 28